William F. WEBB and Gwendolyn H. Webb, individually and as Trustees of WFPP Trust, Plaintiffs and Appellants,

v.

BRINKERHOFF CONSTRUCTION COMPANY, a corporation, and Roger A. Brinkerhoff, Defendants and Appellees.

No. 960506.

Supreme Court of Utah.

Dec. 1, 1998.

Laura M. Gray, Milo S. Marsden, Salt Lake City, for plaintiffs.

Thomas W. Seiler, Provo, for defendants.

STEWART, Justice:

Plaintiffs William F. Webb and Gwendolyn H. Webb, individually and on behalf of the Webb family trust (collectively the "Webbs"), sued defendants Brinkerhoff Construction Company and Roger A. Brinkerhoff (collec-tively "Brinkerhoff") for $28,550.05. The Webbs claimed this amount as assignees of a debt owed to Contract Carpets and Interiors, Inc. ("Contracts Carpets"), by Dr. and Mrs. Steven Nance (the "Nances") for materials Contract .Carpets had installed in the Nances' home. The trial court ruled that Brinkerhoff was not liable to the Webbs. We affirm.

Brinkerhoff was the general contractor for the construction of the Nances' home. In that capacity, Brinkerhoff received invoices from subcontractors, prepared draw sheets for the Nance's approval, and submitted the draw sheets to the Nances' bank for payment from a construction loan. Contract Carpets contracted directly with the Nances for tile, carpets, and other flooring materials for their new home.

Prior to its contract with the Nances, Con-tract Carpets had experienced financial diffi-culties and had borrowed over $1,000,000 from the Webbs. Contract Carpets secured that debt with its assets and receivables. Richard Dastrup, owner and president of Contract Carpets, approached William Webb and informed him that Contract Carpets was obligated to supply materials for four homes in a home show. One of the homes was the Nances'. Dastrup stated that Contract Car-pets could not obtain the necessary materials for the home show unless the Webbs loaned Contract Carpets additional money. The Webbs agreed to lend Contract Carpets an additional $100,000, secured by an assign-ment to the Webbs of payments Contract Carpets was to receive for the work and materials supplied to the owners of the four homes.

William Webb entrusted Dastrup with the responsibility of effectuating the assignment to the Webbs of Contract Carpet's receiv-ables for the materials supplied to the four homes. Dastrup approached Brinkerhoff and asked him to sign an acknowledgment of the assignment on an unexecuted assignment form. Neither Dastrup, on behalf of assign-or, Contract Carpets, nor Webb, on behalf of the assignees, had signed the assignment. Brinkerhoff's signature on the unexecuted assignment showed "receipt acknowledged." His signature, however, was given on the

express representation that the assignment would not become effective until Brinkerhoff had been notified that the assignor and assignee had executed the assignment, as the trial court found and the Webbs do not contest. Brinkerhoff was not informed that the assignment was actually executed until suit was filed. No notice was given the Nances of the assignment.

Thereafter, Contract Carpets submitted invoices to Brinkerhoff; Brinkerhoff prepared, and the Nances approved, draw sheets showing $28,550.05 payable to Contract Carpets; [1] and the bank paid Contract Carpets that amount. Contract Carpets continued to suffer financial problems. Thereafter, the Webbs took possession and control of Contract Carpets under a nonjudicial foreclosure agreement. Contract Carpets and Dastrup filed for bankruptcy.

The Webbs sued Brinkerhoff for the $28,550.05 that the Nances paid Contract Carpets on the ground that Brinkerhoff had failed to comply with the assignment of debt. After a bench trial, the court ruled in favor of Brinkerhoff on the grounds that (1) the assignment was not binding until notice of its completion had been communicated to Brinkerhoff; (2) the Nances, not Brinkerhoff, were the obligors on the debt; and (3) Brinkerhoff had no authority to bind the Nances to the assignment. The court also ruled that there was no consideration between the Webbs and Brinkerhoff to support the imposition of a contractual duty to pay the assigned money to Webb. On appeal, the Webbs assert that the trial court erred on each of these rulings.[2]

The Webbs assert that the trial court erred in ruling that Brinkerhoff was not liable under the assignment as an obligor. Their argument is that Brinkerhoff was the general contractor on the Nances' home and that as a general contractor, Brinkerhoff had actual or apparent authority to direct the Nances' bank to pay materialmen and subcontractors; therefore, Brinkerhoff was liable for not honoring Contract Carpets' assignment to Webb. Brinkerhoff contends that it was not liable to the Webbs on the assignment because it was never indebted to Contract Carpets and that Contract Carpets was not a Brinkerhoff subcontractor because Brinkerhoff did not contract with Contract Carpets. In sum, Brinkerhoff asserts that although it was the general contractor for building the Nance home, it was not the Nances' agent, and therefore had no actual or apparent authority from the Nances to pay the Contract Carpets debt.

 It is axiomatic that the assignee of a debt receives nothing more under the assignment than the assignor of the debt had. See Jack B. Parson Cos. v. Nield, 751 P.2d 1131, 1133 (Utah 1988); First Inv. Co. v. Andersen, 621 P.2d 683, 686 (Utah 1980); Aird Ins. Agency v. Zions First Nat'l Bank, 612 P.2d 341, 344 (Utah 1980); Wiscombe v. Lockhart Co., 608 P.2d 236, 238 (Utah 1980). Contract Carpets assigned the debt the Nances owed it to Webb. At the time of the assignment, Contract Carpets was the Nances' creditor, not Brinkerhoff's. It follows that the Webbs—the assignees—acquired no right against Brinkerhoff by virtue of the assignment unless Brinkerhoff can be held on some theory of agency to be liable for the Nances' debt.

Although Brinkerhoff signed the assignment form acknowledging receipt of the unexecuted assignment form, the record does not disclose that Brinkerhoff had authority from the Nances to direct payment of the Nances' debt to Contract Carpets. The Webbs assert that Brinkerhoff's position is indefensible because of "common construction industry practice[s]," which the Webbs seek to establish on the basis of "examples [from Utah case reports] of assignments being issued in favor of banks or other entities covering proceeds due to a subcontractor on

---

1. Contract Carpets sent Brinkerhoff several invoices over a period of time. The total bill for labor and materials came to approximately $44,000. The Nances paid the balance of the debt after the Webbs took control of Contract Carpets' business.

2. Brinkerhoff additionally argues that the Webbs' negotiation of the final check issued by the Nances constituted a release of the entire debt. The trial court referred to the purported "release" provision in its findings of fact, but did not rule on it. Because we decide this case on other grounds, we do not address this point.

construction projects where the assignor [general contractor] is acting as an agent for a principal, and is not the personal obligor." [3] The Webbs assert that their position is supported by the fact that three other assignments of debt executed by Contract Carpets with respect to work done on other homes in the same home show were all honored by the general contractors working on those homes.

The trial court found that Contract Carpets was not Brinkerhoff's subcontractor. The Nances dealt directly with Contract Carpets. Whatever the common practice is with respect to general contractors directing payments to subcontractors and the honoring of assignments of debts owed subcontractors, we express no opinion as to the legal consequences of such practices. The issue is not developed factually or legally in this case.

■■■ There is, however, a clear alternative ground for decision on which we rely. The notification to Brinkerhoff of the assignment from Contract Carpets to the Webbs was inadequate to impose liability on Brinkerhoff. Notification to a debtor of an assignment of the debt is indispensable if the debtor is to be held liable to the assignee. In the usual course of commercial relationships, a debtor knows his creditors and is entitled to discharge a debt by paying the person who extended credit. If the debt is to be discharged by payment to someone other than the creditor because of that assignment, unambiguous notification of the change must be given the debtor; otherwise, the debtor is entitled to discharge the debt by paying the original creditor. A debtor, having no notice of an assignment of the debt, cannot be held liable to pay the same debt twice.

Timing of the notification of an assignment can be critical to the validity of assignment because timing can affect the substantive right of the debtor to offset other credits or defenses the debtor has against the debt. In *Time Finance Corp. v. Johnson Trucking Co.*, 23 Utah 2d 115, 458 P.2d 873, 875 (Utah 1969), notice of an *intended* assignment was given a debtor's agent prior to the actual execution of the assignment. However, no notice of the *actual* assignment was given. The Court held that notice of the *intended* assignment was not valid notice and therefore the assignment itself was not effective. Quoting *C.I.T. Corp. v. Glennan*, 137 Cal. App. 636, 31 P.2d 430, 431 (1934), the Court explained that "'an assignee, in order to protect himself, cannot remain silent.... [T]o protect his rights, the assignee must notify the debtor of the assignment, since the latter is entitled to all setoffs and defenses he may have or may acquire against the assignor, until he is notified of the assignment.'" *Time Fin.*, 458 P.2d at 876.

Here, as in *Time Finance*, Brinkerhoff was given notice of the *intended* assignment when Brinkerhoff signed an acknowledgment of receipt of the assignment form. However, the acknowledgment was prior to the actual execution of the assignment by the assignor, and in addition, Brinkerhoff's acknowledgment of the assignment was specifically subject to the condition that notice of the execution of the assignment would be given to Brinkerhoff. No such notice was ever given.

The Webbs also argue that Brinkerhoff should be liable because of estoppel. The trial court ruled against the Webbs on the issue on factual grounds. The trial court did not err.

Affirmed.

Chief Justice HOWE, Associate Chief Justice DURHAM, Justice RUSSON, and Justice ZIMMERMAN concur in Justice STEWART's opinion.

---

**3.** *See Wasatch Bank v. Surety Ins. Co. of Cal.*, 703 P.2d 298, 299 (Utah 1985); *McIntosh v. Bank of Salt Lake*, 24 Utah 2d 245, 469 P.2d 1016, 1017 (Utah 1970); *W.P. Harlin Constr. Co. v. Continental Bank & Trust Co.*, 23 Utah 2d 422, 464 P.2d 585, 587 (Utah 1970).