2014 UT App 148

**Robert M. ARATA, Plaintiff and Appellant,**

v.

**SHEFCO, LTD.; Sheffield Development, Inc.; Keystone Construction and Design, Inc.; and Stephen N. Sheffield, Defendants and Appellees.**

**No. 20121028–CA.**

Court of Appeals of Utah.

June 26, 2014.

Eric P. Lee, for Appellant.

V. Lowry Snow, J. Gregory Hardman, and Devin Snow, for Appellees.

Judge J. FREDERIC VOROS JR. authored this Opinion, in which Judge MICHELE M. CHRISTIANSEN and Senior Judge PAMELA T. GREENWOOD concurred.[1]

### Opinion

VOROS, Judge:

¶ 1 This appeal involves a condition precedent in a real estate purchase contract. The condition did not occur, and the buyer did not complete the purchase. The district court ruled on summary judgment that because the condition precedent benefitted the seller alone, the seller alone could, and did, waive the condition, triggering the buyer's obligation to perform. The buyer contends on appeal that the condition benefitted him also and thus that its nonoccurrence excused his performance. We agree with the buyer that the condition precedent benefitted him. We thus reverse the summary judgment in favor of the seller and remand for further proceedings.

### BACKGROUND

¶ 2 Plaintiff Robert M. Arata, a retired railroad conductor from New York, wanted to build a home in St. George, Utah. In 2005 he met with Stephen N. Sheffield. Sheffield, an experienced St. George developer, seemed right for the job. Sheffield conducted business through several related entities, including Shefco, Ltd., Sheffield Development, Inc., and Keystone Construction and Design, Inc. Together, the entities constituted, as the district court later put it, a "vertically-integrated development process."

¶ 3 After some negotiating, Arata and Shefco signed a real estate purchase contract (the Contract). Under the Contract, Shefco agreed to sell and Arata agreed to buy a lot (the Lot) in a Sheffield Development subdivision for $155,000. They conditioned the Contract on Arata and Keystone signing another contract for the construction of a home at a target price and by a target completion date:

> This Contract is conditional upon Buyer executing a construction contract prior to closing for Keystone Construction & Design, Inc. building a home on this lot to be completed by April 2006 upon terms they shall agree upon. Target package $550,000.

As required by the Contract, Arata paid the entire $155,000 purchase price for the Lot shortly after signing the Contract. However, for reasons that the parties disagree about but that are not germane to the issue on appeal, Arata never executed the contemplated construction contract with the builder,

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

Keystone. Consequently, Arata demanded that Shefco return his $155,000 payment for the Lot. Shefco refused.

¶ 4 In 2008, Arata sued Sheffield, Shefco, Sheffield Development, and Keystone (collectively, Defendants) for return of the $155,000. He contended that the nonoccurrence of the condition precedent excused both parties' performance under the Contract. Instead of returning Arata's payment, Sheffield caused the title owner of the Lot, Sheffield Development, to execute and deliver a warranty deed to Arata.

¶ 5 Arata and Defendants filed cross motions for summary judgment. The district court granted summary judgment in Defendants' favor, ruling that the condition precedent unilaterally benefitted Defendants, that they could therefore unilaterally waive the condition, and that they did waive the condition when they unconditionally conveyed the Lot to Arata.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Arata contends that the district court erred in granting Defendants' motion for summary judgment. We review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness. *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600.

## ANALYSIS

¶ 7 Arata contends that because the home-construction condition benefitted him as well as Shefco, Defendants could not unilaterally waive it. It benefitted him, Arata argues, because it (1) required that Keystone build the home, (2) set a target completion date of April 2006, and (3) set a target price of $550,000. Defendants respond that Shefco could unilaterally waive the condition because it benefitted only Shefco.

¶ 8 "A condition is 'an event, not certain to occur, which must occur ... before performance under a contract becomes due.'" *McArthur v. State Farm Mut. Auto. Ins. Co.,* 2012 UT 22, ¶ 29, 274 P.3d 981 (quoting Restatement (Second) of Contracts § 224 (1981)). Because "no duties arise between the contracting parties until the condi-

tion has been fulfilled," *id.,* failure of "'a material condition precedent relieves the obligor of any duty to perform,'" *id.* (quoting *Harper v. Great Salt Lake Council, Inc.,* 1999 UT 34, ¶ 14, 976 P.2d 1213 (citing 3A Arthur Linton Corbin, Corbin on Contracts § 630, at 20–21 (1960))). Whether a condition precedent was fulfilled generally presents a question of fact. *ASC Utah, Inc. v. Wolf Mountain Resorts, LC,* 2013 UT 24, ¶ 13, 309 P.3d 201. "'Conditions precedent may be waived by the party in whose favor they are made.'" *Foster v. Montgomery,* 2003 UT App 405, ¶ 23, 82 P.3d 191 (quoting 17A Am.Jur.2d *Contracts* § 658 (2003)).

¶ 9 Here, the Contract contained a condition precedent—that before closing Arata would execute a contract with Keystone, a third party but related to the seller, to construct a home on the Lot. Arata contends that this condition precedent benefitted him as well as Shefco.

¶ 10 First, Arata argues that the condition benefitted him by ensuring that his new home would be built by Keystone. Undisputed evidence establishes that Arata had seen and liked the other Keystone homes in the area. Arata lived out of state and was glad to avoid the time and expense of finding a reputable builder. Moreover, Sheffield assured Arata that Keystone could build the home that Arata wanted at the price that Arata wanted. In Sheffield's own words, the Contract "was meant to be a transition document leading [the parties] to a construction contract for the entire package, breaking down the purchase of the [Lot] as step one and building the house as step two."

¶ 11 Second, Arata argues that the condition benefitted him by specifying a target completion date. As an out-of-state buyer, Arata wanted a completion date so he could move forward with relocation plans.

¶ 12 Finally, Arata argues that the condition benefitted him by specifying a target price. When Arata began discussing his plans with Sheffield, he did not want to exceed a total purchase price of $500,000. Sheffield explained that the house Arata wanted would cost close to $550,000. Arata agreed to proceed when Sheffield assured

him that Keystone could build his custom home for $550,000 ($150,000 for the Lot and $400,000 for the home). In fact, Sheffield even testified that the target price "was something that [Arata] wanted to have put in the contract."

¶ 13 These claimed benefits are based in the text of the Contract and in undisputed evidence presented in connection with the cross motions for summary judgment. We therefore agree with Arata that the evidence demonstrates as a matter of law that the condition precedent benefitted him.

¶ 14 Defendants argue that even without the condition precedent Arata could contract with Keystone—or any other builder—to build his home on whatever terms he could negotiate. Furthermore, they note, as a non-party to the Contract, Keystone could not be held to the target completion date or target purchase price. However, these objections miss the mark. The benefit to Arata was that the Contract was conditioned on the execution of the Keystone construction contract. Without the condition precedent, Arata could have purchased the Lot and contracted with Keystone or another builder to build a home on it. But the condition precedent ensured that unless he and Keystone could mutually agree on the terms of a construction contract, he had no obligation to purchase the Lot. Simply finding another builder to build the home would not have provided Arata this benefit. Only with the protection of the condition precedent could Arata ensure that he would realize what Sheffield described as an "entire package," with "the purchase of the [Lot] as step one and building the house as step two."

¶ 15 Defendants also argue that *Eliason v. Watts* supports the district court's ruling. 615 P.2d 427 (Utah 1980). There, a contract for the sale of real property was conditioned on the buyers' obtaining a septic-tank permit for the property. *Id.* at 429. When the buyers failed to obtain the permit, the seller refused to convey title and the buyers sued. *Id.* The seller argued that the buyers' failure to obtain the land-use permit invalidated the contract. *Id.* at 430. He argued that the condition benefitted him as well as the buyers because the installation of a septic tank

might benefit him as the owner of nearby property. *Id.*

¶ 16 The Utah Supreme Court held that the condition benefitted only the buyers: "The failure to obtain a permit does not deprive [the seller] of any valuable right. The provision was added to the contract by [the buyers], and the condition was clearly for their benefit in putting the property to its desired use." *Id.* Accordingly, the court concluded that because the buyers alone were entitled to demand the benefit of that condition, "if they chose to waive the condition, it was within their power to do so." *Id.* (citing *Ahrendt v. Bobbitt,* 119 Utah 465, 468, 229 P.2d 296 (1951)).

¶ 17 While the legal framework of *Eliason* governs here, its facts support Arata's position. In *Eliason,* the buyers' inability to obtain a permit frustrated or at least delayed their ability to construct a home on the property. *Id.* at 429. But the seller's contractual interest was merely to receive the sales price; he did not (as here) lose the benefit of an ancillary construction contract or any other benefit contemplated in the contract. *Id.* While he claimed that he would benefit from the buyers' building a home on the property, that incidental benefit inured to him only because he happened to own property nearby. *Id.* at 430. It did not benefit him as the seller of the subject property. *Id.* Nor was that incidental benefit tied to the text of the real estate purchase contract. *Id.*

¶ 18 In contrast, the anticipated benefits Arata has identified are spelled out in the purchase agreement: if Keystone was unwilling to build the house he wanted at the target price and by the target completion date, Arata was released from any obligation to purchase the Lot. Indeed, the condition precedent more directly benefitted Arata than it did Shefco. The provision describing the condition never mentions Shefco, whose claim to a benefit rests on parol evidence connecting it—through Sheffield (a nonparty to the Contract)—to Keystone (also a nonparty to the Contract).

¶ 19 Shefco further argues that this court should not consider Arata's parol evidence because it varies and contradicts the

terms of the Contract. The parol evidence rule "operates ... to exclude evidence of prior or contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an integrated contract." *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995). Both parties here rely on extrinsic evidence, but neither does so to vary or expand the terms of the Contract. Accordingly, like the district court, we look to the undisputed extrinsic evidence to determine whether the condition precedent benefitted Arata.[2]

¶ 20 Finally, Defendants contend that Arata "cannot use his nonperformance as a basis for rescission." This argument rests on a factual predicate: that "Arata refused to contract with Keystone for his home construction," "opting instead to speculate" in a rising real estate market. Arata replies that this argument lacks record support or at the very least "was the subject of factual disputes before the district court."

¶ 21 Because the district court ruled that Shefco and Keystone could and did unilaterally waive the condition precedent, the court had no reason to reach these factual issues. Accordingly, it would be premature for us to do so. We thus leave the matter for the district court to determine on remand.

## CONCLUSION

¶ 22 We reverse the summary judgment entered in favor of Defendants and remand for further proceedings consistent with this opinion.

---

2. Because we agree with Arata that the condition precedent benefitted him, we do not reach his alternative argument that Keystone, a nonparty to the Contract, could not and did not waive the condition.