ALVIN G. BUSCH, d/b/a Busch Bros. Realtors, *et al.*, Plaintiffs-Appellants, *v.* GREGORY G. EISIN *et al.*, Defendants-Appellees.

First District (1st Division)   No. 80-1221

Opinion filed May 26, 1981.

David L. Choate, of Bridgeview, for appellants.

Edwin A. Gausselin, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Brokers instituted an action against sellers to recover a real estate commission. In their complaint, brokers alleged that they were entitled to such commission under the terms of a listing agreement. The trial court dismissed brokers' complaint, finding that since their right to a commission was expressly conditioned upon the sale of sellers' property, and since the sale was not consummated until after the expiration of the listing period, brokers were not entitled to a commission.

On appeal, brokers argue that the trial court erred in determining that the property was "sold" upon closing rather than when the parties entered into an enforceable contract of sale.

We reverse and remand.

Alvin Busch and Mary Kay O'Shea (plaintiffs) operated businesses dealing with the purchase and sale of real estate. On February 17, 1978, plaintiff Busch entered into a listing contract with Gregory and Mary Rose Eisin (defendants). The agreement required Busch to make an earnest effort to procure a purchaser for defendants' property and gave him the exclusive authority to sell the property for 180 days. The contract also required defendants "[t]o cooperate fully with the Realtor and refer all inquiries to him, to conduct all negotiations through him; to pay a real estate brokerage fee in the amount of 6% of the sales price, if the property is sold by the Realtor, by the Seller or by or through any other person during the period of this agreement, *or if it is sold directly or indirectly within 60 days after termination*, to a purchaser to whom it was offered during the period hereof." (Emphasis added.)

On June 26, 1978, within the 180-day exclusive listing period, an offer to purchase the subject property was made by plaintiff Mary Kay O'Shea on behalf of Amin and Jacqueline Nemeh (purchasers). Three days later, O'Shea made a second offer on behalf of purchasers. Fully aware that purchasers had been shown the property by plaintiffs, defendants rejected both offers.

The 180-day exclusive listing period terminated on August 16, 1978. Two weeks later, defendants entered into a contract to sell the subject property to purchasers. On October 16, 1978, the 60-day extension period ended and on November 30, 1978, defendants closed the real estate transaction by delivering their deed to purchasers in exchange for the proceeds of the transaction.

Upon learning of the conveyance by defendants to purchasers, plaintiffs attempted to collect their commission. When defendants refused to pay, plaintiffs instituted proceedings in the circuit court. The trial

court sustained defendants' motion to strike and dismiss plaintiffs' complaint and plaintiffs appealed.

The issue presented in this case is whether plaintiffs are entitled to a real estate commission under the terms of the listing contract. As stated above, the contract provided that a commission was due if defendants' property were "sold" within the 60-day extension period to a purchaser to whom it had been offered during the 180-day exclusive listing period. It is undisputed that the property was shown to purchasers by plaintiffs during the 180-day exclusive listing period and that two offers were made by plaintiffs on behalf of purchasers during that same period. The resolution of the controversy in this case turns on the proper construction to be given the word "sold" as used in the listing agreement.

Plaintiffs contend that the subject real estate was "sold" when defendants and purchasers entered into a sales contract on August 29, 1978. Since the date falls within the 60 day extension period, plaintiffs maintain that they are entitled to the brokerage commission specified in the listing contract. Defendants, on the other hand, argue that the real estate was not "sold" until November 30, 1978, the closing date. Since the closing occurred after the termination of the 60-day extension period, defendants urge that plaintiffs are not entitled to any brokerage commission.

The leading Illinois case of *Monroe v. Snow* states the general rule as to when a real estate broker has earned his commission:

> "A real estate broker employed to make sale of land, who finds a purchaser at the price fixed by the owner, who is ready, able and willing to take a conveyance and pay the purchase price, has earned the compensation agreed to be paid him * * *." (*Monroe v. Snow* (1890), 131 Ill. 126, 136, 23 N.E. 401.)

Since *Monroe*, the application of the ready, able and willing test has been the subject of numerous court opinions. (See, *e.g., J. J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 365 N.E.2d 721; *Wolfenberger v. Madison* (1976), 43 Ill. App. 3d 813, 357 N.E.2d 656; *Robertson v. Reed* (1976), 35 Ill. App. 3d 525, 341 N.E.2d 402; *Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 322 N.E.2d 217; *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361; *Bernard Klibanow & Co. v. Shafer* (1971), 2 Ill. App. 3d 392, 276 N.E.2d 446; *Webster v. Hochberg* (1969), 105 Ill. App. 2d 466, 245 N.E.2d 529; *Hersher v. Wells* (1902), 103 Ill. App. 418.) When a listing agreement provides that a commission is due when the broker procures a purchaser ready, able and willing to purchase the property, a seller may be obligated to pay a brokerage commission even though the property is not ultimately sold. (M. Hauselman, Illinois Real Estate Sales, Financing and Foreclosures 25 (1978).) To avoid such a

situation, sellers sometimes stipulate in listing agreements that a commission is not due unless and until the sale is closed.

The listing agreement in the instant case does not require that sellers pay a commission when the brokers procure a ready, able and willing purchaser. Nor does it expressly provide that a commission only becomes due when the sale is closed. Rather, it ambiguously states that sellers must pay a commission if the property is "sold" within 60 days after the termination of the exclusive listing period to a purchaser to whom it was offered during the exclusive listing period.

■■ Under well established contract principles, an agreement must be given a fair and reasonable interpretation based on a consideration of the language and provisions contained therein. *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67, 294 N.E.2d 272; *Arthur Rubloff & Co. v. Comco Corp.* (1978), 63 Ill. App. 3d 362, 367, 380 N.E.2d 15.

■■ An analysis of the language of the listing agreement indicates that the word "sold" does not, as defendants contend, mean closed. The agreement requires the owners to pay a commission "* * * if the property is *sold by the Realtor*, by the Seller or by or through any other person during the period of this agreement * * *." (Emphasis added.) Since a realtor does not have the authority to transfer a deed to property, we do not believe that it was intended that the commission be due only upon closing.

Additionally, the agreement contains a paragraph which provides for the payment of a broker's commission out of the earnest money deposit in the event of a default by a purchaser. The inclusion of such a provision is totally inconsistent with defendants' claim that closing within the 60-day extension period is a prerequisite to plaintiffs' entitlement to a commission. Obviously, if the parties had intended "sold" to mean "closed," such a provision would be unnecessary and meaningless. In construing a contract, we must give effect to every term and avoid the conclusion that terms are meaningless. (*Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 54, 360 N.E.2d 551.) Therefore, we reject defendants' explanation of the meaning of the word "sold."

Frequently, closing dates are delayed because of the purchaser's difficulty in obtaining financing or title defects which must be cleared by the seller. (M. Hauselman, Illinois Real Estate Sales, Financing and Foreclosures 50 (1978).) Such delays may be caused by the purchaser, seller or financial institutions, but not by the broker. If we were to find that plaintiffs in this case did not become entitled to a commission until closing, it would encourage sellers to delay closings to avoid having to pay brokerage commissions. Although we recognize that a seller and broker may agree that a commission is not due unless and until a sale is

consummated, we choose not to infer that this was the intent of the parties in this case.

■■ In the instant case, plaintiffs procured two offers substantially similar to the asking price during the term of the exclusive listing. Both offers were rejected. Within the 60-day extension period, however, defendants and purchasers entered into a contract which was mutually obligatory. In our judgment, the binding contract entered into within the 60-day period constituted a sale for purposes of entitling plaintiffs to a commission, regardless of the fact that the actual transfer of title did not take place until after the termination of the 60-day extension period.

For the foregoing reasons, the order of the circuit court of Cook County is reversed and the cause is remanded for a full hearing.

Order reversed; cause remanded.

GOLDBERG and O'CONNOR, JJ., concur.