796 P.2d 1098

RANCH WORLD OF NEW MEXICO, INC., a New Mexico corporation, Plaintiff–Appellee and Cross–Appellant,

v.

BERRY LAND & CATTLE COMPANY, INC., a New Mexico corporation and H.C. Berry, Defendants–Appellants and Cross–Appellees.

No. 18701.

Supreme Court of New Mexico.

Aug. 22, 1990.

Sanders, Bruin, Coll & Worley, Robert V. Cochrane, Roswell, for defendants-appellants and cross-appellees.

Michael M. Rueckhaus, Albuquerque, for plaintiff-appellee and cross-appellant.

OPINION

RANSOM, Justice.

This suit was brought to recover a real estate sales commission on the sale of the 14,902 acre Venado Ranch to the Navajo Tribe. The district court found that Ranch World of New Mexico, Inc. was entitled to a broker's commission of $51,600 on the sales price of $1,290,000 paid to the owner, Berry Land & Cattle Company. We affirm.

In February 1983 Ranch World and H.C. Berry, acting for the Berry Land & Cattle Company, entered into an exclusive listing agreement for the sale of the Venado Ranch. The agreement provided for a four per cent sales commission in the event of a "sale" of the property to the Navajo Tribe after expiration of the listing but within 180 days following July 15, 1983.

When the listing expired, Berry and a private consultant pursued the possibility of a sale to the Navajo Tribe. Negotiations between Berry and the tribal officials culminated in a resolution of the Navajo Tribal Council on December 15, 1983, approving the purchase of the ranch for $1,300,000. A purchase and sale agreement between the Navajo Tribe and Berry was not executed until May 8, 1984, and the sale was

not closed until June 28, 1984. Also, at some point prior to closing, the parties agreed to reduce the purchase price by $10,000 due to an easement problem.

The listing agreement controls the broker's right to a commission. *See* 7 R. Powell, *The Law of Real Property* ¶ 938.17[3] (1990). The provision for a 180–day protective period clearly was intended to address the situation where the owner himself, after the expiration of the listing, continued with negotiations for the sale of the property to previously developed prospects.

The resolution of this case turns upon the meaning to be given the word "sale" in the listing agreement. If the property was "sold" to the Navajo Tribe within the meaning of the listing agreement prior to the expiration of the 180–day period, then Ranch World is entitled to the commission. Berry argues that the December 15 resolution of the Navajo Tribal Council did not "commit and bind" the tribe to purchase the ranch and, therefore, there was no "sale" until after the expiration of the 180–day period. Berry argues that there was no certainty that the necessary funds would be available, that the resolution had no effect until it was approved by the area director of the Bureau of Indian Affairs, and that, because of tribal sovereign immunity, the resolution imposed no real duty on the Tribe or its officials to consummate the purchase.

Both parties presented to the district court expert witnesses who gave considerable conflicting testimony on matters of Navajo Tribal law and federal Indian law. Ranch World's expert disputed the various contentions of Berry's expert, namely, that the Navajo Tribe did not enter into a binding agreement to purchase the property by virtue of the resolution of the Tribal Council. Ranch World's expert characterized the resolution as follows: "It has agreed upon the purchase; it set the price; it has identified the funds available to pay the price. It is now up to the various Tribal agents involved to finalize the deal."

■ We hold that the term "sale" as used in the listing agreement in this case refers to any agreement of purchase and sale that was entered into prior to the expiration of the 180–day period and that resulted in a completed transaction. This interpretation of the term "sale" in the listing agreement is consistent with the decisions of a number of jurisdictions. *E.g., Great Falls Properties, Inc. v. Professional Group, Ltd.*, 649 P.2d 1082 (Colo. 1982) (en banc); *Covino v. Pfeffer*, 160 Conn. 212, 276 A.2d 895 (1970); *Busch v. Eisin*, 96 Ill.App.3d 909, 52 Ill.Dec. 454, 422 N.E.2d 135 (1981); *Bolger v. Danley Lumber Co.*, 77 Ill.App.3d 207, 32 Ill.Dec. 685, 395 N.E.2d 1066 (1979); *Doerflinger Realty Co. v. Fields*, 281 S.W.2d 609 (Mo.Ct. App.1955); *Dean Vincent, Inc. v. Chef Joe's, Inc.*, 273 Or. 814, 541 P.2d 469 (1975) (en banc). These decisions reflect the view that even an oral agreement for the sale of real estate made during the listing period, or following the expiration of the listing but within an agreed period thereafter, meets the requirement of a "sale" where the transaction is consummated as agreed.

It is immaterial whether the sales agreement is enforceable or whether the parties make minor modifications to their agreement prior to the time of closing. *See Great Falls Properties*, 649 P.2d at 1085; *Covino*, 160 Conn. at 215, 276 A.2d at 897; *see also Simmons v. Libbey*, 53 N.M. 362, 208 P.2d 1070 (1949) (when seller agrees to sale by unenforceable oral agreement, his acceptance of the purchaser is conclusive of the fact that mutually agreeable terms have been reached and broker is due his commission). Absent express terms in the listing agreement delineating the consummation of the transaction, this Court is loath to attribute to the term "sale" a meaning likely to encourage manipulation of a "done deal" so as to avoid payment of a commission as intended by the parties to a listing agreement.

■ We find ample evidence in this case of the existence of an agreement of purchase and sale prior to the expiration of the 180–day period. On August 10, 1983, the Advisory Committee to the Navajo Tribal Council passed a resolution approving the purchase of the Venado Ranch. On September 15 Berry wrote a letter to the act-

ing director of the Navajo Department of Land Resources indicating that the advisory committee and he had negotiated an agreement for the sale of the ranch for $1,300,000 and that Berry expected the Tribal Council to act on the proposed sale during its current session.[1] In another letter, dated November 26, Berry's consultant again indicated that the advisory committee and Berry had reached a negotiated agreement for the sale of the ranch for $1,300,-000. Finally, on December 15, 1983, the Navajo Tribal Council passed a resolution approving the purchase and authorizing the chairman of the Tribal Council to execute all documents necessary to complete the transaction. Ranch World's expert on Navajo Tribal law testified that the Navajo Tribal Council was the ultimate governing authority of the Navajo Nation. He stated that "the Resolution of December 15th, 1983, constituted a final conclusive determination by the Navajo Tribe to enter into this transaction * * * and that all the actions that followed upon that conclusive commitment were merely implementing that decision."

Ranch World complains on cross-appeal that the trial court denied prejudgment interest at the statutory rate from June 28, 1984. This Court has adopted the view of the *Restatement of Contracts* § 337(a) (1932) that prejudgment interest should be awarded as a matter of right where the defendant has breached a contract to pay a definite sum of money. *O'Meara v. Commercial Ins. Co.*, 71 N.M. 145, 376 P.2d 486 (1962); *see also Bill McCarty Constr. Co. v. Seegee Engineering*, 106 N.M. 781, 750 P.2d 1107 (1988); *Shaeffer v. Kelton*, 95 N.M. 182, 619 P.2d 1226 (1980). Nevertheless, we also recognize that the award should not be made "arbitrarily without regard for the equities of each particular situation." *Id.* at 188, 619 P.2d at 1232.

In this case the request for the award of prejudgment interest was denied without explanation. We believe it is the defendant's burden to adduce a sufficient basis for the denial of such an award where the amount due is known with reasonable certainly at the time of defendant's breach. Certainly one of the foremost equitable considerations before a trial court is the fact that a plaintiff has been denied the use of the money during the pendency of the lawsuit. *See Ulibarri v. Gee*, 107 N.M. 768, 764 P.2d 1326 (1988). In the case of a liquidated debt, prejudgment interest generally should be awarded absent peculiar circumstances. The award does not represent a penalty, but is in the nature of compensation for the loss of the use of the funds. We conclude that, in the absence of any findings to justify the denial of the prejudgment interest award, the denial was an abuse of the trial court's discretion.

We affirm the finding that Berry owes Ranch World a four per cent commission on the sales price of $1,290,000. The cause is remanded to the trial court for inclusion of interest within the judgment at the statutory rate from June 28, 1984.

IT IS SO ORDERED.

SOSA, C.J., and WILSON, J., concur.

---

1. The September 15th letter from Berry to the acting director of the Navajo Department of Land Resources reads in pertinent part:

   It is my understanding that you have been instructed to draft a resolution for consideration by the Tribal Council during their current session on the purchase of the Venado Ranch. I first priced the ranch at $1,800,-000.00 and an appraisal at $1,700,000.00 was presented to the Resources Committee * * *. The Advisory Committee on August 10, 1983, offered me a price of $1,300,000.00 by a vote of 14 to 0 which I accepted, and then I considered the property as being sold—subject only to merchantable title and transfer of surface rights and leases.

   \*　\*　\*　\*　\*　\*

   * * * I have negotiated in good faith, my price is firm. I expect that the price of $1,300,000.00 as negotiated and approved by the Advisory Committee will be presented as outlined above to the Tribal Council.