This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MELBA SILVA, GREG CHAVEZ, and ELENA ELLISON,**

    Plaintiffs-Appellees,

v.                        **NO. 30,404**

**RAYMOND CHAVEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

Pedro G. Rael
Los Lunas, NM

for Appellees

Law Offices of Nicholas R. Gentry, L.L.C.
Nicholas R. Gentry
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Raymond Chavez (Defendant) appeals from the district court's final judgment, and the district court's findings of fact and conclusions of law. [RP 230, 214] Defendant raises four issues on appeal. [DS] This Court filed first and second calendar notices proposing summary affirmance in part and summary reversal in part. [CN1, CN2] Melba Silva (Plaintiff) filed responses in support of both of the calendar notices, indicating that she did not oppose the proposed summary dispositions. [PMIS1, PMIS2] We addressed the arguments Defendant raised in his memorandum in opposition to the first calendar notice in the second calendar notice. [DMIO1, CN2] Defendant has filed a memorandum in opposition to the second calendar notice that we have duly considered. [DMIO2] Unpersuaded, however, we affirm in part and reverse in part.

**DISCUSSION**

**Issue 1 - Imposition of a Constructive Trust**

Defendant continues to contend that clear and convincing evidence does not support the imposition of a constructive trust on the bank account funds in the amount of $58,185.88, or the district court's decision that Defendant misappropriated $42,230.84 of those funds for his own purposes. [DS 4, DMIO1, DMIO2] In his first and second memorandums, Defendant argues that the district court's imposition of a

constructive trust was not legally correct, because the trial court did not enter any findings or conclusions that proof of a clear and convincing nature existed. [DMIO1 3; MIO2 3-4] Defendant points out that the district court did not find any evidence of undue influence or that Defendant dominated or controlled his mother, Josefita Chavez. [DMIO1 3; MIO 3-4] The district court found that Josefita Chavez was competent at all material times. [Id.] Defendant further continues to contend that the imposition of a constructive trust is inconsistent with the plain language of the power of attorney, which granted him broad powers and allowed him to spend the money in the bank account as an owner of the account until his mother's death. [DMIO1 1,2, 4; DMIO2 4] Defendant also continues to argue that if this Court concludes that Defendant was not entitled to spend the money in the bank account or spent it inappropriately, then the total amount that was inappropriately spent was $27,225.69, rather than $42,230.84. [DMIO1 4] Defendant further continues to argue that the district court disregarded certain evidence that he presented that more expenditures were made on behalf of his mother. [DMIO2 6] We remain unpersuaded and affirm the district court on this issue.

"The imposition of a constructive trust is an equitable remedy, and as such is within the broad discretion of the district court." *In re Estate of Duran*, 2003-NMSC-008, ¶ 35, 133 N.M. 553, 66 P.3d 326. "A court will impose a

constructive trust 'to prevent the unjust enrichment that would result if the person having the property were permitted to retain it.'" *Gushwa v. Hunt*, 2008-NMSC-064, ¶ 34, 145 N.M. 286, 197 P.3d 1 (quoting *Duran*, 2003-NMSC-008, ¶ 34). Courts have held that certain conduct, "such as fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct[,]" may warrant the imposition of a constructive trust. *Id.* (internal quotation marks and citation omitted). "If a court imposes a constructive trust, the person holding legal title is subjected to an equitable duty to convey the property to a person to whom the court has determined that duty is owed." *Id.* (internal quotation marks and citation omitted).

In this case, as Defendant points out, the district court found that Josefita Chavez's will, the warranty deed, and the power of attorney were valid instruments executed during Josefita's lifetime, and that Defendant did not exert undue influence over his mother and that he did not dominate or control her. [RP 215-16, fofs 14-22] The district court also found that Defendant had validly used the power of attorney to accomplish various tasks on behalf of his mother including recovering his mother's money from Elena Ellison and opening the bank account with the proceeds of that lawsuit in the amount of $46,103.53, in 2003. [RP 216, fofs 23-27]

The district court also found, however, that the bank account was created for the sole benefit of Josefita Chavez and that all deposits made into the bank account

4

were made for her sole benefit. [RP 217, fofs 30-31] The district court further found that of the $58,185.88 that had been deposited to his mother's account for her sole benefit, Defendant spent $15,995.04 of that amount on legitimate expenses relating to the care of his mother and her property. [RP 217, fofs 31-34] In this regard, the docketing statement indicates that "[t]here was much testimony and evidence at trial about what expenditures by [Defendant] from that Bank Account were proper or improper." [DS 7] Plaintiff claimed that she was entitled to the return of all funds illegally withdrawn by imposition of a resulting or equitable trust. [RP 3, Nos. 10-12; RP 208, proposed findings nos. 10-20] Plaintiff eventually conceded that Defendant appropriately withdrew $15,995.04 from the bank account for the benefit of their mother. [RP 217, fofs 32-34] Plaintiff asserted in the complaint and she showed at trial, to the satisfaction of the district court, that Defendant used for his own purposes, rather than for his mother's sole use and benefit, the rest of the funds in the bank account in the amount of $42,230.84. We consider this the type of wrongful conduct that would warrant imposition of a constructive trust.

After trial, the district court concluded that Defendant had failed to present any credible testimony or evidence that he had spent the $42,230.84 for the benefit of his mother: "The Court finds that no credible evidence was presented entitling [Defendant] to any credit against the disputed amount of $42,230.84." [RP 218, fof

5

38; *see also* fofs 35, 36, 37, 39] To the extent Defendant continues to argue that the factual findings of the district court are not supported [DMIO2 6], it is well established that this Court does not reweigh the evidence or the credibility of the witnesses. *See, e.g.*, *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33 ("[W]hen there is a conflict in the testimony, we defer to the trier of fact."); *see also Maestas v. Martinez*, 107 N.M. 91, 93, 752 P.2d 1107, 1109 (Ct. App. 1988) (stating that a reviewing court may not assess the weight of evidence except "[w]here an issue to be determined rests upon the interpretation of documentary evidence."). We affirm the district court's conclusion as to the amount of money in his mother's bank account that Defendant used for his own purposes rather than for the benefit of his mother in the amount of $42,230.84.

Defendant continues to argue, however, that these conclusions are inconsistent with the express terms of the durable power of attorney, which grant him broad powers over his mother's finances. [DMIO1 3; DMIO2 4] The district court determined, however, that the *bank account* was created for the sole benefit of Defendant's mother. [RP 217, fof 30] Defendant, his mother, and Plaintiff Melba Silva were signatories on the bank account. [Id.] Defendant did not present any evidence that his mother executed *the power of attorney* for the purpose of gifting the funds in *her bank account* for Defendant's own use during her lifetime. Rather, as

discussed above, Plaintiff showed and the district court found that Defendant used a substantial portion of the funds ($42,230.84) in his mother's bank account for his own use instead of using them for the benefit of his mother. [RP 217, fof 30-40] Defendant provided "no credible evidence" to rebut Plaintiff's showing. [RP 218, fof 38; *see also* fofs 35, 36, 37, 39] As such, notwithstanding the broad powers granted in the power of attorney, Defendant's conduct that supports the imposition of the equitable remedy of a constructive trust is Plaintiff's evidence that Defendant used $42,230.84 in the bank account, which was created for his mother's sole benefit, for his own use during her lifetime.

We affirm the district court on this issue.

**Issues 2 and 3—The Parties' Relative Interests in the Bank Account**

Defendant claims that the district court's decision to apportion the interests in the bank account at 75% (Plaintiff) and 25% (Defendant) is not supported by the evidence or the district court's own findings of fact. [DS 6] Defendant also contends that the district court erred in deciding that Defendant owes 75% of the misappropriated funds in the amount of $31,673.13, plus interest at the rate of 15% from July 31, 2005, until paid, to Plaintiff Melba Silva. [DS 7] This Court's first calendar notice proposed summary reversal on these two Issues. In their response to the first and second calendar notices, neither Defendant nor Plaintiff opposed this

Court's factual or legal analysis with regard to these two Issues. Accordingly, we reverse for the reasons set forth in the first calendar notice as discussed below.

"Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it." *Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct. App. 1991). As Defendant explains in the docketing statement [DS 6], the district court's finding of fact: "Plaintiffs Hepolito Greg Chavez and Elena Ellison were not owners of, and had no legal right in, that bank account[]" [RP 216, fof 25], conflicts with the district court's decision to award Plaintiff Melba Silva 75% of the misappropriated funds or $31,673.13 as of July 31, 2005, based on Plaintiffs Greg Chavez and Elena Ellison having gifted their interests in the bank account to Plaintiff Melba Silva. [RP 218, fofs 29, 40] We noted in the first calendar notice, therefore that it is unclear to this Court how Greg and Elena could gift their interest in the bank account to Melba when the district court also found that they had had no interest in it. [DS 6; RP 216, fof 25] Moreover, as Defendant points out, under their mother's will, which the district court found to be valid, Greg and Elena were entitled to nothing. [DS 6]

As such, because the district court's finding of fact No. 25 cannot be read to be consistent with findings of fact Nos. 29 and 40, we reverse the district court on these issues. In Issue 1, we hold that the district court was correct in finding that Defendant

did not spend $42,230.84 for the benefit of his mother. Therefore, with regard to Issues 2 and 3, we hold that Defendant owes Melba 50% of $42,230.84, plus interest as discussed in Issue 4 below, rather than 75% of $42,230.84, plus interest.

**Issue 4—Pre- and Post-Judgment Interest**

Defendant contends that the district court erred in ruling that Plaintiff was entitled to 15% annual pre- and post-judgment interest. [DS 8] In his first memorandum, Defendant argues that the imposition of pre-judgment interest was in error because the district court did not enter any findings or conclusions that the money was retained without the owner's consent expressed or implied, pursuant to NMSA 1978, § 56-8-3 (1983). [DMIO1 5] In addition, Defendant contends that the imposition of post-judgment interest should be at the rate of 8 3/4% rather than at the rate of 15%, because the district court made no findings that Defendant had engaged in any tortious conduct, bad faith, or intentional or willful acts, pursuant to NMSA 1978, § 56-8-4 (2004).

In the second calendar notice, we continued to propose to affirm the district court's award of pre-judgment interest at the rate of 15%; we proposed to reverse the district court's award of post-judgment interest at the rate of 15%, however. In the second memorandum, Defendant continues to contest the award of pre-judgment interest at the rate of 15% on the basis that Plaintiff could not have actually earned

9

that much on the constructive trust money during that time period. [DMIO2 7] Defendant now agrees with this Court's proposal in the second calendar notice that post-judgment interest should be imposed at the rate of 8 3/4% rather than at the rate of 15%. [DMIO2 8] We remain persuaded, however, that this Court's analysis in the second calendar notice was correct and appropriate under the circumstances of this case.

The award of pre-judgment and post-judgment interest is governed by statute in New Mexico. Sections 56-8-3; -4. The meaning of a statute is a question of law, which we review de novo on appeal. *Souter v. Ancae Heating & Air Conditioning*, 2002-NMCA-078, ¶ 8, 132 N.M. 608, 52 P.3d 980. We review an award of prejudgment interest, however, for an abuse of discretion. *Bird v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-088, ¶ 27, 142 N.M. 346, 165 P.3d 343.

Section 56-8-3(B) (pre-judgment interest) provides:

The rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually in the following cases:

. . . .

B. on money received to the use of another and retained without the owner's consent expressed or implied[.]

Section 56-8-4(A)(2) (post-judgment interest) provides:

A. Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight

10

and three-fourths percent per year, unless:

. . . .

(2) the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of fifteen percent.

With regard to pre-judgment interest, "[o]ne of the foremost equitable considerations before a trial court is the fact that a plaintiff has been denied the use of the money during the pendency of the lawsuit." *Ranch World of N.M., Inc. v. Berry Land & Cattle Co.*, 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990). With regard to post-judgment interest, while an award of pre-judgment interest under Section 56-8-4(B) is discretionary, an award of post-judgment interest under Section 56-8-4(A) is mandatory. *Weststar Mortg. Corp. v. Jackson*, 2002-NMCA-009, ¶ 55, 131 N.M. 493, 39 P.3d 710, *rev'd on other grounds*, 2003-NMSC-002, 133 N.M. 114, 61 P.3d 823.

Although Defendant contends that Plaintiff could not have actually earned 15% on the constructive trust money during the pre-judgement time period [DMIO2 7], that is not the statutory test. In accordance with Section 56-8-3(B), the district court specifically found that "[Defendant] got the benefit and use of the sum of $31,673.13 which belonged to Melba Silva from August [sic] 31, 2005 through the present." [RP 218, fof 41] The district court further found that "Said use by [Defendant] unjustly enriched him to the extent of the full amount of $31,673.13 at the expense of Melba Silva." [RP 218, fof 42] Finally, the district court found that "Melba Silva is entitled

11

to a reasonable return on $31,673.13 from July 31, 2005 until paid and is entitled to interest thereon as damages for the missed opportunity to use said funds." [RP 218, fof 43] Thus, the district court concluded that "Melba Silva is entitled to judgment against [Defendant] in the sum of $31,673.13, plus interest at the rate of 15% per annum from August 1, 2005, until paid." [RP 221 col 22]

As discussed above in Issues 2 and 3, we have held that Plaintiff Melba Silva is entitled to 50% of $42,230.84, rather than $31,673.13. By awarding interest from August 1, 2005, "until paid," the district court was awarding both pre- and post-judgment interest on that amount, 50% of $42,230.84. As discussed above, the district court's findings support the imposition of pre-judgment interest at the rate of 15% expressly for the reasons allowed by Section 56-8-3(B). [RP 218, fofs 41-43]

As we discussed in the second calendar notice, however, we disagree with the district court's decision to award post-judgment interest at the rate of 15%, because the district court did not make findings that the judgment is based on Defendant's "tortious conduct, bad faith or intentional or willful acts," which would allow post-judgment interest to be imposed at the rate of 15% per annum as provided in Section 56-8-4(A)(2), rather than at the rate of 8 3/4% as provided in Section 56-8-4(A). Because the district court made no findings or conclusions that Defendant's conduct, in light of the fact that he had a power of attorney and he was a signatory on the bank

12

account, arose, as a legal matter, to the level of tortious, bad faith, intentional or willful misconduct, the imposition of post-judgment interest at the rate of 15% is not supported by the statute.

Thus, we affirm the district court's imposition of pre-judgment interest at the rate of 15% from August 1, 2005, until April 6, 2010, the date of the judgment imposing a constructive trust. We reverse the imposition of post-judgment interest at the rate of 15%, and hold that the rate of 8 3/4% per annum is applicable pursuant to Section 56-8-4(A), from April 6, 2010, until paid.

**CONCLUSION**

For the reasons discussed above, we affirm Issue 1; we reverse Issues 2 and 3. With regard to Issue 4, we affirm the imposition of pre-judgment interest at the rate of 15% per annum from August 1, 2005 to April 6, 2010; we reverse the imposition of post-judgment interest at the rate of 15% per annum on the basis that the rate of 8 3/4% per annum from April 6, 2010, until paid, is the rate of interest that is payable pursuant to Section 56-8-4(A). We remand to the district court for re-entry of judgment in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

13

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**